No. 86,630

STATE OF KANSAS, *Appellee*, v. WILLIAM C. MOORE, *Appellant*.

(55 P.3d 903)

Opinion filed October 25, 2002.

*Patrick H. Dunn*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with him on the briefs for appellant.

*John H. Taylor*, assistant county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

Six, J.: Defendant William C. Moore appeals his convictions of one count of aggravated indecent liberties with a child, K.S.A. 21-3504(a)(3)(A), and one count of kidnapping, K.S.A. 21-3420(b).

The issues before us are whether the district court erred in: (1) responding to the jury's question, (2) admitting evidence of prior crimes, and (3) imposing an unconstitutional sentence. Moore also claims that prosecutorial misconduct, insufficient evidence, and cumulative error require reversal of his convictions.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer from Court of Appeals on our own motion).

We find no error in the trial proceedings and affirm Moore's convictions. We also hold that the district court's decision to double defendant's sentence under K.S.A. 1997 Supp. 21-4704(j) does not violate *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). However, *sua sponte,* we raise the issue of the legality of Moore's sentence and the district court's use of a prior conviction to enhance his criminal history score and to qualify him as a persistent sex offender under 21-4704(j). Moore's sentence is vacated, and the case is remanded for resentencing.

## FACTS

On August 20, 1997, a 15-year-old boy, S.C., reported that a few days before, he saw Moore walk from Moore's house to the backyard of the house next door where 6-year-old L.V. lived. S.C. next saw Moore take L.V. by the hand and walk her back to Moore's house. S.C. "got suspicious," so he knocked on Moore's front door. Receiving no answer, he walked around the house and peered into the back bedroom window. S.C. saw Moore on the bed, leaning over L.V. with his penis exposed on her chest. L.V. wore a flowery swimsuit, and her legs were spread around Moore's waist. L.V. was holding a red teddy bear, and Moore's hands were on L.C.'s waist. S.C. left the window. About 15 or 20 minutes later, he saw Moore and L.V. come out of the house. Moore hugged L.V. before she returned to her backyard.

Initially, S.C. did not report the incident to the police because he did not want to become involved with the police. He had re-

cently been released from juvenile detention for violating curfew. Three or four days after the incident, S.C. informed L.V's mother and reported the incident to police. Later, he admitted that he had been untruthful in some of his statements to the police because he was afraid of being arrested for burglarizing Moore's house on the day before the incident. Details of S.C.'s version of events changed over time. At trial, S.C. explained that some of the inconsistencies between his initial report to the police and his testimony at the preliminary hearing and trial occurred because he did not want to admit that he had burglarized Moore's home.

According to S.C.'s trial testimony, he and J.H. had broken into Moore's house one evening in August 1997. At trial, S.C. testified against Moore in exchange for the State's agreeing not to prosecute him for the burglary of Moore's house.

Officer Hester testified that L.V. said Moore took her into his house and showed her a knife, a toy, and his "private part." When another officer asked her if Moore had shown her his private parts, she said, "No." L.V.'s mother testified that L.V. said Moore had led her out of her backyard and into his house where he pushed her onto the bed. L.V. also told her mother that Moore showed her a knife and a toy. According to L.V.'s mother, about a week later after talking to the officer, L.V. told her that Moore had showed her his "private part" but that she had closed her eyes.

L.V. testified at trial that she had been in Moore's house one time that summer. L.V. and a friend were swimming in her backyard. Moore was on his porch and let her come inside his house. L.V. claimed that her friend was with her. She said Moore took her into his bedroom. L.V. also said Moore did "something bad," which was to show her a toy and a knife. She testified that she had never seen a grown-up's "private place."

The district court admitted into evidence a videotape that was recovered from the items S.C. had stolen from Moore's home. The tape contained two segments showing L.V. and neighborhood children playing in L.V.'s backyard. According to Moore, he had repaired a video camera during the spring or summer of 1997. He said he tested the camera by placing it in a window and then making adjustments.

Geraldine Blair, a program manager at a mental health clinic and a licensed specialist clinical social worker, was a witness for the State. Blair specialized in the treatment of sex offenders. She testified that sometimes child molesters videotape children so they can later masturbate or fantasize about that person. After viewing the videotape showing children at play over different periods of time, she expressed concern about an offender making such tapes. In her opinion, it suggested the offender might be relapsing.

The State also presented evidence of Moore's prior misconduct. In 1988, Moore pled nolo contendere to charges of sexual exploitation of a child and indecent liberties with a child. Moore served a prison term for these crimes and was paroled in 1995.

An investigating officer testified that the 1988 case was based upon a videotape in which Moore filmed a young girl. The tape had been destroyed by the time of the current trial. The officer testified to what he had seen on the tape. The tape depicted the girl lying fully clothed on a couch. After some whispering, she gyrated her hips. After a distortion in the tape, the girl's pants and panties were around her knees, and Moore reached over and fondled her vaginal area; then the camera zoomed in on her vaginal area.

Moore served a prison term for these crimes and was paroled in 1995.

Moore testified in his defense. He denied taking L.V. into his house, showing her a toy, or exposing his genitalia to her. He claimed that he was being set up by S.C. According to Moore, he returned from work one evening around midnight and caught S.C. and his friend J.H. "fooling" with Moore's car. When confronted, they allegedly swung a baseball bat at Moore. Moore later learned that they had loosened lug nuts on his car. Moore claimed that he asked a friend to report the incident to police, but there was no reference on the police department's computer logs concerning such a report. Moore's parole officer testified that Moore never informed him of the alleged incident. At trial, both S.C. and J.H. denied any incident involving Moore's car or a baseball bat.

Moore also testified that S.C. tried to extort money from him. Once, S.C. came to Moore's house and said, "[Y]ou give me $500

dollars or you will go back to prison. I'm going to tell the police something that will put you back in prison." A friend of Moore's testified that he had heard a conversation where S.C. talked to Moore about $500. However, Moore did not report the "back in prison" incident to police.

Moore was convicted of both crimes. The district court imposed two concurrent terms of 380 months' imprisonment. Moore was 67 years old at the time he was sentenced in 1998.

## DISCUSSION

### *The Jury Question*

Moore argues that the district court erred in its response to a question submitted by the jury. We disagree.

K.S.A. 22-3420(3) provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

Our standard of review is abuse of discretion. See *State v. Manning*, 257 Kan. 128, 130-31, 891 P.2d 365 (1995). Judicial discretion is abused only when no reasonable person would take the view adopted by the district court. *State v. Lopez*, 271 Kan. 119, 125, 22 P.3d 1040 (2001).

Before jury deliberations, the district court gave the following instruction:

"The defendant is charged with the crime of aggravated indecent liberties with a child. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant fondled or touched the person of [L.V.] in a lewd manner, with the intent to arouse or satisfy the sexual desires of either the child, himself or both;

"2. That [L.V.] was a child under 14 years of age; and

"3. That this act occurred between 1 and 20 August, 1997, in Geary County, Kansas.

"Lewd fondling or touching may be defined as a fondling or touching in a manner which tends to undermine the morals of the child, which is so clearly

offensive as to outrage the moral sense of a reasonable person, and which is done with the specific intent to arouse or satisfy the sexual desires of either the child or the offender or both. Lewd fondling or touching does not require contact with the sex organ of one or the other."

During deliberations, the jury asked, "Would the taking of videotapes qualify for the charge of aggravated indecent liberties with a child?"

Outside the presence of the jury, the judge expressed to Moore and counsel that in answering the question, he would simply reread the jury instruction on indecent liberties or direct the jury to that instruction. Defense counsel thought the judge should tell the jury that the answer to the question was "no." After calling the jury into the courtroom, the judge told the jury to "carefully reread Instruction Number 6, which sets out the elements the State has to prove to establish the charge of aggravated indecent liberties with a child."

Moore asserts that the jury "was clearly confused and the trial court provided no guidance." He relies on *State v. Bandt*, 219 Kan. 816, 549 P.2d 936 (1976).

Bandt was convicted of three counts of theft and one count of illegal removal of a motor vehicle identification number. After retiring for deliberations, the *Bandt* jury asked whether the knowledge that the goods were stolen had to exist when the goods were received or could simply exist at some later point. The district court refused to elaborate on PIK Crim. 59.01, the instruction given on the question of law. However, the judge permitted counsel for the parties to present to the jury a brief colloquy of their conflicting statements of the law. 219 Kan. at 821-22.

On appeal, we noted that normally the jury instruction as given would have been sufficient but the unusual circumstances in *Bandt* created a positive duty for the district court to clarify its former instructions. Unlike most cases, the district court effectively required a confused jury to determine the question of Bandt's guilt or innocence without having the key question of law determined by the court. We concluded that in view of the jury's confusion under the circumstances, the district court's failure to clarify the

former instructions was prejudicial and denied the defendant a fair trial. 219 Kan. at 823.

The facts here differ from the facts in *Bandt*. The question and resolution here are similar to the question and resolution in *State v. Peck*, 237 Kan. 756, 703 P.2d 781 (1985). In *Peck*, during the course of deliberations, the jury sent a question to the district judge concerning one of the instructions. Without the intervention of the parties, the judge responded to the jury's question: " 'The Court declines to elaborate upon the written instructions already provided. Please re-read the instructions and apply those instructions collectively to the facts as proved to your satisfaction beyond a reasonable doubt.' " 237 Kan. at 765. On appeal, we found no abuse of discretion in the response and said: "When the question has already adequately been covered by the original instructions, the trial court may decline to answer and may direct the jury to re-read the instructions already given." 237 Kan. 756, Syl. ¶ 6.

Aggravated indecent liberties requires a touching. See K.S.A. 21-3504(a)(3)(A). Clearly, the videotaping of a child does not constitute a touching. Unlike the situation in *Bandt*, where counsel was permitted to advance conflicting statements of the law, the jury's question was already adequately covered by the court's instruction.

### *Prosecutorial Misconduct*

Moore contends that prosecutorial misconduct during closing argument warrants a reversal. His contention lacks merit.

We have discussed in previous cases the standard of review for allegations of prosecutorial misconduct raised for the first time on appeal. See *State v. McCorkendale*, 267 Kan. 263, 979 P.2d 1239 (1999).

In *State v. Pabst*, 268 Kan. 501, 505, 996 P.2d 321 (2000), we described the approach to prosecutorial misconduct in the case of closing argument:

"The analysis of the effect of a prosecutor's alleged improper remarks in closing argument is a two-step process. First, we decide whether the remarks were outside the considerable latitude the prosecutor is allowed in discussing the evidence. In criminal trials, the prosecution is given wide latitude in language and in manner of presentation of closing argument as long as the argument is consistent with the evidence. Second, we must decide whether the remarks constitute plain error;

that is, whether they are so gross and flagrant as to prejudice the jury against the accused and deny a fair trial, requiring reversal. [Citation omitted.]"

Moore argues the prosecutor's comments improperly vouched for the credibility of a State's witness and impermissibly painted Moore as a liar.

During closing arguments, the prosecutor included the following remarks:

"Something about Charlie Moore [defendant] scared that kid [L.V.] to death, and when the defense gets done talking about [S.C.] this, and [S.C.] that, and Paula [V.] that, and Paula [V.] this and that, just remember who the victim in this case is. *It's not [S.C.], it's [L.V.], and nothing that you've been told here in the last two days should indicate to you that she's a liar.*

"Where the defense blew it in this case was what they were going to admit and what they were willing not to admit. You see, you don't have to agree as far as [S.C.] to convict in this case. What did the defendant say? 'The girl was never in my house. Never. Not with me.' Well, even the first time she talked to her mother, before she ever mentioned private parts or him being exposed or places where men go potty and stuff like that, she was already saying, 'I was in the house with him,' before anyone had a chance to coerce her or drum a story into her or pressure her, or be repeatedly interviewed until she got the story right. She was already saying, 'I was in that house.' *Well, she already paints him as a liar just by that alone.*

"Now, if the defense had come in and said, 'Well, yeah, she was in the house but nothing happened,' then it might have worked, they might have gotten away with it, but you can't reconcile the girl's testimony alone with what he's saying. Forget [S.C.] for a second. You could convict based on [L.V.] right now. [S.C.] is a bonus to me, take him for what you want, but this case is won with [L.V.], that videotape of her interview, and that videotape that he took in his house of her." (Emphasis added.)

Moore asserts that the prosecutor's two comments on the believability of Moore's testimony was akin to the prosecutor's egregious conduct in *Pabst*. We disagree. Here, the prosecutor was explaining to the jury why, in light of the evidence presented, Moore's story was not feasible.

The prosecutor's comments were not outside of the "considerable latitude" the prosecutor is allowed in discussing the evidence. Here, it appears the prosecutor was attempting to show that Moore's version of events was not feasible based on the testimony of L.V. at trial. Under the facts of this case, the prosecutor's com-

ments were not so gross and flagrant as to prejudice the jury against the defendant and to deny him a fair trial, nor do the comments reflect any ill will on the prosecutor's part. See *State v. Finley,* 273 Kan. 237, 242-43, 42 P.3d 723 (2002).

### K.S.A. 60-455

Next, Moore argues the district court erred in admitting evidence under K.S.A. 60-455 of his prior 1988 convictions.

In 1988, Moore pled no contest to sexual exploitation of a child, K.S.A. 21-3516 (Ensley 1988), and indecent liberties with a child, K.S.A. 21-3503(b) (Ensley 1988). The convictions stemmed from a videotape that Moore made of a young girl playing in the aisles of his store. He later recorded himself fondling the little girl's genitals. The State sought to admit the prior convictions to show preparation, plan, and identity. Over Moore's objection, the district court permitted the State to introduce the prior crimes evidence because of the similarities as to identity, motive, preparation, and plan, and because the prior crimes' probative value outweighed the prejudice.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Three requirements must be satisfied for the admission of evidence under K.S.A. 60-455. First, the evidence must be relevant to prove one of the facts specified in the statute. Second, the fact must be a disputed, material fact. Third, the probative value of the evidence must outweigh its potential prejudice. If these requirements are met, the scope of appellate review is limited to whether the district court abused its discretion. *State v. Simkins,* 269 Kan. 84, 92, 3 P.3d 1274 (2000).

Under K.S.A. 60-455, prior offenses need not be identical in nature to the offense for which the defendant is on trial. Similarity is sufficient. *State v. Lane,* 262 Kan. 373, 390, 940 P.2d 422 (1997).

The two crimes at issue here are similar to Moore's 1988 convictions. Both crimes involved young girls of comparable age. Moore prefaced his criminal conduct with a videotape recording of his victims at play before any fondling of the victims' genital areas or exposing his penis to the victims. In addition, both crimes occurred privately where Moore had control of the environment, either in his store or his home. Moore also contends that even if we find his prior convictions relevant, it is nevertheless immaterial to the facts in dispute. We disagree. See *State v. Faulkner*, 220 Kan. 153, 156, 551 P.2d 1247 (1976). Moore's defense that the alleged conduct never took place squarely contradicts the issues of identity, motive, preparation, and plan and places them in issue.

Finally, we note that in addressing the K.S.A. 60-455 question, the district court instructed the jury as follows: "Evidence has been admitted tending to prove that the defendant committed a crime other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's identity, motive, preparation, and plan in the current case."

We conclude that the district court did not abuse its discretion in admitting evidence under K.S.A. 60-455 regarding Moore's 1988 convictions.

## Sufficiency of the Evidence

Moore also contends there was insufficient evidence to support his convictions. A number of pages in his brief are devoted to illustrating inconsistences in the testimony of the State's witnesses to undermine their credibility and to suggest that his conviction was secured by circumstantial evidence at best. Our standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Zabrinas*, 271 Kan. 422, 441-42, 24 P.3d 77 (2001).

We acknowledge that certain evidence supporting the conclusion that Moore committed the crimes was circumstantial. But a conviction of even the gravest offense may be sustained by circum-

stantial evidence. *State v. Smith*, 245 Kan. 381, 393, 781 P.2d 666 (1989).

Although inconsistent at times, the evidence supporting the conviction included the testimony of S.C., the victim, and the victim's mother. Issues of credibility are within the province of the jury. "On appellate review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are resolved in favor of the State." *State v. Van Winkle*, 254 Kan. 214, 225, 864 P.2d 729 (1993), *cert. denied* 511 U.S. 1144 (1994). When all the evidence is viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found Moore guilty beyond a reasonable doubt.

### *Cumulative Error*

In his reply brief, Moore advances a cumulative error argument. Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelmingly against the defendant. *State v. Bedford*, 269 Kan. 315, 332-33, 7 P.3d 224 (2000). Our review of the record reveals no prejudicial trial errors. Moore's argument that he was denied a fair trial fails.

### *Moore's Sentence - K.S.A. 21-4710(11)*

We first consider a problem with Moore's sentence which was not raised in the briefs. See K.S.A. 22-3504 (the court may correct an illegal sentence at any time).

Moore had a criminal history score of B, which included sexual exploitation of a child, a person felony; indecent liberties with a child, a person felony; and theft, a nonperson misdemeanor. Aggravated indecent liberties with a child is a severity level 3 felony; kidnapping is also a severity level 3 felony. Moore's criminal history score, combined with the severity level of his crimes, called for a presumptive prison sentence of 172-180-190 months for each crime. See K.S.A. 1997 Supp. 21-4704(a).

The district court applied K.S.A. 1997 Supp. 21-4704(j), which says:

"The sentence for any persistent sex offender whose current convicted crime carries a presumptive term of imprisonment shall be double the maximum duration of the presumptive imprisonment term. The sentence for any persistent sex offender whose current conviction carries a presumptive nonprison term shall be presumed imprisonment and shall be double the maximum duration of the presumptive imprisonment term. Except as otherwise provided in this subsection, as used in this subsection, 'persistent sex offender' means a person who: (1) Has been convicted in this state of a sexually violent crime, as defined in K.S.A. 22-3717 and amendments thereto; and (2) at the time of the conviction under subsection (1) has at least one conviction for a sexually violent crime, as defined in K.S.A. 22-3717 and amendments thereto in this state or comparable felony under the laws of another state, the federal government or a foreign government. The provisions of this subsection shall not apply to any person whose current convicted crime is a severity level 1 or 2 felony."

"Sexually violent crime" is defined in pertinent part in K.S.A. 1997 Supp. 22-3717(d)(2)(B), (C), and (H) to include the crimes of indecent liberties with a child, aggravated indecent liberties with a child, and sexual exploitation of a child. K.S.A. 1997 Supp. 22-3717(d)(2)(L) also includes in the definition of a sexually violent crime

"any act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated. As used in this subparagraph, 'sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification."

The district court apparently noted that Moore had been convicted of a sexually violent crime—the district court did not specify which one—and that his current conviction of aggravated indecent liberties was statutorily defined as sexually violent. The district court then doubled the maximum sentence for a 3-B crime and imposed a 380-month prison term for the aggravated indecent liberties conviction.

The district court next found that Moore's conviction of kidnapping was sexually motivated, thus fitting the definition of a sexually violent crime under K.S.A. 1997 Supp. 22-3717(d)(2)(L). The district court again doubled the maximum sentence for a 3-B crime

and imposed a 380-month prison term for the kidnapping conviction. The district court ordered the sentences to run concurrently.

At sentencing, Moore argued that the district court could not use a prior conviction to enhance his criminal history score and use the same prior conviction to qualify him as a persistent sex offender under K.S.A. 1997 Supp. 21-4704(j). The district court rejected Moore's argument.

K.S.A. 21-4710(d)(11) says:

"Prior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level or applicable penalties, elevate the classification from misdemeanor to felony, or are elements of the present crime of conviction. Except as otherwise provided, all other prior convictions will be considered and scored."

*State v. Taylor,* 27 Kan. App. 2d 62, Syl. ¶ 3, 998 P.2d 123, *rev. denied* 269 Kan. 940 (2000), held: "A prior conviction upon which a defendant has been classified as a persistent sex offender under K.S.A. 1997 Supp. 21-4704(j) may not be used in determining that defendant's criminal history category." We specifically approved the *Taylor* holding in *Zabrinas,* 271 Kan. at 443-44.

Here, the district court erred in failing to remove from Moore's criminal history the sexually violent crime it used to qualify Moore as a persistent sex offender under K.S.A. 1997 Supp. 21-4704(j). With one person felony removed from his criminal history score, Moore's criminal history category is D. See K.S.A. 1997 Supp. 21-4704(a). The presumptive sentence for a 3-D crime is .74-78-83 months' imprisonment. K.S.A. 1997 Supp. 21-4704(a). Moore's sentence for aggravated indecent liberties and his sentence for kidnapping must be vacated and remanded for resentencing.

## *The* Apprendi *issue*

Moore next asserts that, following *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), the fact that he is a "persistent sex offender" under 21-4704(j) must be proven to a jury beyond a reasonable doubt before it can be used to double the duration of his prison term. He contends that because such a jury finding was absent in this case, his Sixth and Fourteenth Amendment rights have been violated. We recognize that Moore's

sentence must be vacated and remanded for the reasons set forth above, but we address the *Apprendi* issue here for the benefit of the district court on remand.

Moore's constitutional challenge is a question of law over which we have unlimited review. See *State v. Crow*, 266 Kan. 690, 694, 974 P.2d 100 (1999).

K.S.A. 1997 Supp. 21-4704(j) provides that the sentence for any persistent sex offender is presumed imprisonment in all cases and shall be double the duration of the maximum presumptive sentence.

*Apprendi* held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

Moore's argument assumes that doubling the duration of his prison sentence under 21-4704(j) increases the penalty for his crime beyond the prescribed statutory maximum, triggering *Apprendi*. The State counters that the plain language of 21-4704(j) defines the statutory maximum sentence as imprisonment for double the maximum term in the appropriate grid box. Thus, the State argues, Moore has received a sentence within the statutory range and *Apprendi* does not apply.

Attempting to define the statutory maximum sentence in this situation is a complicated task and one which ultimately is unnecessary to the disposition of this case. Instead, we begin the analysis by observing that the finding that Moore is a persistent sex offender requires two things: (1) the existence of a prior conviction for a statutorily defined sexually violent crime; and (2) that the current crime of conviction is a statutorily defined sexually violent crime. We have recently held that neither of these facts must be proved to a jury beyond a reasonable doubt in order to use them to increase a defendant's sentence.

In *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), we analyzed the prior conviction exception to the *Apprendi* rule. We held that *Apprendi* did not require a jury finding of the fact of a prior conviction beyond a reasonable doubt in order for the prior conviction to be included in Ivory's criminal history score under the Kansas

Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq*. We also rejected the argument that *Almendarez-Torres v. United States,* 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), the source of the prior conviction exception, had been called into doubt by *Apprendi. Ivory,* 273 Kan. at 46-47.

We took *Ivory* one step further in *State v. Graham,* 273 Kan. 844, 46 P.3d 1177 (2002), where Graham raised an *Apprendi* objection to the use of his prior drug convictions to increase the severity level of his drug crimes and his sentence under K.S.A. 2001 Supp. 65-4160(c). We compared the use of a prior conviction to increase the criminal history score to the use of a prior conviction to increase the severity level of the crime, both of which increased the overall sentence. We concluded that the net effect was the same, and the use of Graham's prior drug convictions to increase his sentence did not implicate *Apprendi.* 273 Kan. at 854.

Also relevant is *State v. Anthony,* 273 Kan. 726, 45 P.3d 852 (2002). Anthony was convicted of aggravated indecent liberties with a child and received an extended postrelease supervision period under K.S.A. 2001 Supp. 22-3717(d)(1)(D)(i). He argued that the extended postrelease supervision period was an unconstitutional upward durational departure sentence under *Apprendi.* 273 Kan. at 729.

We agreed that the extended postrelease supervision period—imposed in Anthony's case because he committed a sexually violent crime—was an upward durational departure sentence. 273 Kan. at 729. However, we concluded:

"The question becomes whether the increased postrelease period runs afoul of the protections outlined in *Apprendi* and *Gould.* We conclude that it does not. Here, the district court simply used the fact that Anthony was convicted of aggravated indecent liberties, by definition a sexually violent crime, to impose an extended postrelease supervision period under K.S.A. 2001 Supp. 22-3717(d)(1)(D)(i). In doing so, the court was not required to make an additional finding of fact beyond that made by the jury. Because the fact relied upon to extend the period of postrelease supervision was found by a jury beyond a reasonable doubt, the 60-month postrelease period imposed does not violate *Apprendi* or *Gould.*" 273 Kan. at 729.

Here, Moore was convicted of aggravated indecent liberties with a child, by definition a sexually violent crime. See K.S.A. 1997

Supp. 22-3717(d)(2)(C). Further, Moore was previously convicted of sexual exploitation of a child and indecent liberties with a child, also defined by statute as sexually violent crimes. See K.S.A. 1997 Supp. 22-3717(d)(2)(B) and (H). The district court was not required to make factual findings beyond the existence of these convictions because all the crimes were defined by the legislature as sexually violent crimes. *Ivory, Graham,* and *Anthony* combine to support our conclusion that the district court's decision to double Moore's sentence under K.S.A. 1997 Supp. 21-4704(j) does not violate *Apprendi.* We note that the Court of Appeals recently reached a similar conclusion in *State v. Spinden,* 30 Kan. App. 2d 1014, 54 P.3d 514 (2002).

We affirm Moore's convictions. We vacate Moore's sentences based on K.S.A. 21-4710(11), *Taylor,* and *Zabrinas,* and remand for resentencing.

LARSON, S.J., assigned.