No. 78,334

STATE OF KANSAS, *Appellee*, v. DAMON L. VONTRESS, *Appellant*.
(970 P.2d 42)

Opinion filed December 11, 1998.

*Mary Curtis*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was convicted of first-degree murder, aggravated robbery, aggravated battery, and criminal possession of a firearm. The district court imposed a mandatory 40-year prison sentence for the first-degree murder conviction and consecutive sentences of 78 months, 41 months, and 8 months, respectively, for the remaining counts. Defendant appeals his convictions and sentences, claiming the trial court erred (1) in denying his motion for mistrial; (2) by including a prior conviction in the criminal history where the prior conviction was an element necessary for the conviction of a charged crime; (3) in not finding the convictions for aggravated robbery and aggravated battery were multiplicitous; (4) in not finding there was insufficient evidence to impose the mandatory 40-year prison sentence; and (5) in not setting aside the sentence for premeditated first-degree murder because the jury found the defendant guilty of that crime and felony murder.

Two gunmen, looking for drugs and money, went to the home of Tim Anderson and Ethel Spires in Wichita, Kansas, on the morning of March 19, 1996. Unknown to the two gunmen, the previous

evening Anderson had received a warning from a friend to "check his perimeter." Based on the warning, Anderson instructed Spires to hide their drugs and money.

Two men with guns knocked on the front door of the residence shortly after 8 a.m. Anderson let the men in. The men followed Anderson to the bedroom where Spires was lying in bed. The men then ordered Anderson and Spires to lie down on the floor and not to look up. One man held a gun on Anderson and Spires while the other man ransacked the house. Although Spires did not know the name of the man who held the gun, she recognized him as a person who had come to her home on several previous occasions with a man she knew only as "Main."

The men took food stamps and approximately $300 from Spires' purse and about $500 from Anderson. Spires begged the man, who held the gun on her, not to kill them. Spires said she wanted to live to see her daughters grow up. The gunman stated that he might let her live because he had two children and understood her concern. Spires then asked if they would let Anderson live. The man replied, "Tim got to go."

Anderson and Spires were ordered to lie in a T-like formation, with Spires' head under Anderson's body. Spires heard Anderson say, "No, no, no." She heard a gunshot and lost consciousness. Police officers found Anderson dead with a gunshot wound to his head. Spires had been shot in the wrist and the shoulder.

Spires provided a description of both assailants to Detective Paul O'Mara. Spires explained that she recognized the gunmen but did not know their names. She told the officers that the gunmen were associates of a man she knew as Main. Detective O'Mara made a computer search of the name. He found Main's legal name and a list of Main's known associates. Detective O'Mara constructed 90 photo arrays, each of which included a photo of one of Main's associates. When Spires viewed the array which contained a photo of Damon L. Vontress, she identified Vontress as one of the gunmen.

Vontress was charged and tried to a jury. Vontress did not testify at trial. He presented two alibi witnesses. Vontress was found guilty of premeditated first-degree murder, aggravated robbery, aggra-

vated battery, and criminal possession of a firearm. The district judge imposed a mandatory 40-year prison sentence for the first-degree murder conviction and consecutive sentences of 78 months, 41 months, and 8 months, respectively, for the remaining counts. Vontress appealed pursuant to K.S.A. 22-3601(b), raising several issues.

## MOTION FOR MISTRIAL

Vontress first contends the district court erred in denying his motion for a mistrial due to the cumulative prejudicial effect of hearsay evidence and improper rebuttal testimony. He asserts that the cumulative errors rise to the level of a constitutional violation of his right to confront the witnesses against him and his right to present a defense.

The Confrontation Clause of the Sixth Amendment to the United States Constitution operates in two ways when determining the admissibility of hearsay statements. First, the Sixth Amendment establishes a rule of necessity. In the usual case, the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. Second, once a witness is shown to be unavailable, the witness' statement is admissible only if it bears adequate indicia of reliability. Reliability can be inferred where the evidence falls within a firmly rooted hearsay exception. If the evidence does not fall within a firmly rooted hearsay exception, the evidence must be excluded absent a showing of particularized guarantees of trustworthiness. *State v. Bratt*, 250 Kan. 264, Syl. ¶ 1, 824 P.2d 983 (1992).

At trial, Kaiesha Lemmie and Eric Williams testified in support of Vontress' alibi defense. Kaiesha Lemmie testified that at about 4:30 on the morning of the murder, Vontress, in an extremely intoxicated state, came to her house and passed out on her living room floor until 10 a.m. Eric Williams' testimony was similar to Kaiesha Lemmie's testimony; however, Eric Williams also stated he had taken Vontress to the house of a mutual friend, Tara Dawson, about 7 or 8 a.m.

The State called Detective Sara Morris to rebut the witnesses' testimony. Detective Morris testified that the day after the murder,

she interviewed Vontress three separate times. During the first interview, Vontress said he was at Tara Dawson's house at the time of the murder. Vontress told Detective Morris he arrived at Dawson's about 12:30 a.m. and did not leave until a friend, Main, picked him up at 11 a.m. Vontress failed to mention Kaiesha Lemmie or Eric Williams.

The State asked Detective Morris why she interviewed Vontress a second time. Detective Morris testified that prior to the second interview she spoke with Tara Dawson about her association with Vontress on the morning of the murder. Detective Morris explained that after interviewing Tara Dawson, she was unable to verify Vontress' alibi because Tara Dawson's account and Vontress' account of Vontress' activities the morning of the murder were inconsistent. Tara Dawson was unavailable at trial. The defense counsel objected, claiming Dawson's statement was hearsay. The judge sustained the defendant's objection and instructed the jury to disregard Detective Morris' answer.

The State then asked Detective Morris to recount her second interview with Vontress. Detective Morris said she again interviewed Vontress because she had not been able to verify the facts Vontress told them at the first interview. The defense counsel again objected to the introduction of hearsay evidence, and the judge commented that Detective Morris had "made the same mistake again." The judge told Detective Morris to restrict her testimony to the interview with the defendant; then the judge instructed the jury to disregard Detective Morris' last answer and to not consider it as evidence.

The State then asked Detective Morris to repeat what Vontress told her during the second interview. Detective Morris said Vontress initially related the story as he had in his first interview, but later in the interview he changed some of the facts. Vontress explained to her that on the morning of the murder, he first went to Tara Dawson's house, but Dawson was not home, so he went to Kaiesha Lemmie's house and asked Eric Williams to let him in Tara Dawson's house. Vontress said he then went to Dawson's house and stayed there until later in the morning. Vontress did not

indicate that he was intoxicated on the morning of the murder or that he spent time at Kaiesha Lemmie's house.

The State argues that Detective Morris' statements regarding her interviews with Vontress were not hearsay. It points out that K.S.A. 60-460 defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated."

When an utterance previously made out of court is offered in evidence merely for the purpose of establishing what was then said, and not for the purpose of establishing the truth of the statement, the statement is not hearsay. If relevant, it is admissible through the person who heard it. *State v. Getz*, 250 Kan. 560, Syl. ¶ 2, 830 P.2d 5 (1992).

We agree that Vontress put his whereabouts on the morning of the murder in issue by introducing evidence of an alibi. The statements of Tara Dawson were not offered for the truth of the statements, but were offered to demonstrate the inconsistencies in Vontress' alibi statements and to explain why Detective Morris interviewed Vontress three times the day after the murder. The statements by Tara Dawson were not hearsay and would have been admissible if the jury had been informed of the limited purpose and instructed how it was to weigh that testimony.

Detective Morris also testified that in a third interview, Vontress repeated what he had stated in the initial interview. The State then asked Detective Morris if Vontress ever told her whether he was acquainted with the murder victim. Detective Morris stated Vontress indicated he knew Anderson. Defense counsel objected to the question as outside the scope of proper rebuttal.

After a brief conference outside the presence of the jury, the court found that the State's question was outside the scope of rebuttal. Defense counsel again moved for a mistrial based on the cumulative effect of the hearsay evidence and the improper rebuttal testimony. The court denied the motion for mistrial, finding that an admonishment of the jury would cure any prejudice to the defendant. The court then admonished the jury:

"Ladies and gentlemen, I sustained the defendant's objection to the last question and, therefore, I'm now instructing you to disregard the very last answer given by

the witness. If you can remember what it was, I'm instructing you to disregard it. And remember what I told you about the evidence in this particular case. You must follow all the instructions I give you about the evidence in this case. When I tell you to disregard evidence I mean disregard evidence. And I take this very seriously. And you are not to consider it whatsoever in your deliberations in this case. Remember that you took an oath that you will do this, and the Court trusts that you will."

The written jury instructions also informed the jury to disregard any evidence the court ruled to be inadmissible.

Vontress also complains that the question regarding whether he knew the murder victim was improper rebuttal evidence because he presented no evidence regarding his acquaintance with the victims.

Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony that contradicts the witnesses on the opposite side, but also evidence that corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court, and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice. *State v. Richard*, 235 Kan. 355, Syl. ¶ 1, 681 P.2d 612 (1984).

However, the trial court was diligent in protecting the rights of Vontress at trial and gave the jury a stern admonition to disregard the improper rebuttal evidence. An admonition to the jury to disregard evidence normally cures prejudice resulting from the improper submission of that evidence. *State v. Stafford*, 255 Kan. 807, 816, 878 P.2d 820 (1994). Nothing suggests that the judge's admonition was not sufficiently curative.

Vontress argues that the trial court should have granted his motion for a mistrial. The trial court may declare a mistrial if prejudicial conduct makes it impossible to proceed with the trial without injustice to the defendant or the State. K.S.A. 22-3423(1)(c). A

decision on a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal absent a clear showing of abuse of discretion. The defendant has the burden of showing substantial prejudice before an appellate court will find an abuse of discretion by the trial court. *State v. Arteaga*, 257 Kan. 874, 886, 896 P.2d 1035 (1995).

The trial court did not abuse its discretion in refusing to grant a mistrial.

## MULTIPLICITY

Vontress contends that his convictions of aggravated robbery and aggravated battery are multiplicitous in violation of the constitutional protection against double jeopardy. Vontress received consecutive sentences for the convictions; if the convictions are multiplicitous, double jeopardy is implicated. Vontress argues that proof of the same act of violence, the infliction of bodily harm upon Spires, was necessary to prove both the aggravated robbery and aggravated battery counts; therefore, he cannot be punished for both crimes.

Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. *State v. Eastridge*, 20 Kan. App. 2d 973, 975, 894 P.2d 243 (1995). Our standard of review on questions of multiplicity is plenary. See *State v. Perry*, 16 Kan. App. 2d 150, 151, 823 P.2d 804, *rev. denied* 249 Kan. 777 (1991).

The State may not split a single offense into separate parts where there is a single wrongful act which does not furnish the basis for more than one criminal prosecution. However, where the criminal conduct of the defendant supports convictions for more than one crime, K.S.A. 21-3107 provides statutory authority for multiple convictions even though the criminal conduct of a defendant consists of a single transaction. *State v. Mincey*, 265 Kan. 257, 262, 963 P.2d 403 (1998).

The test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge. If not, the fact that both charges relate to and grow out of the same transaction does not preclude convictions and sentences for both charges. 265 Kan. at 262-63. Multiplicity does not depend upon whether the facts proved at trial are actually used to support conviction of both offenses charged; rather, it turns upon whether the elements of proof necessary to prove one crime are also necessary to prove the other. 265 Kan. at 263.

As charged and instructed, Vontress could be found guilty of aggravated battery if the jury determined that he intentionally caused great bodily harm to Spires. The jury could find Vontress guilty of aggravated robbery if it found Vontress inflicted bodily harm upon Spires in the course of a robbery.

The State contends that Spires sustained two gunshot wounds, each of which supports a separate conviction. The State argues that one of Spires' gunshot wounds supports the aggravated battery conviction and the other supports the aggravated robbery conviction.

There was no distinction made in the charging instrument or in the jury instructions between the injury sustained by Spires which provided the great bodily harm element in the aggravated battery count and the injury sustained by Spires which provided the bodily harm element in the aggravated robbery count. Therefore, the State's argument fails that one of the two gunshot wounds supported the aggravated battery conviction and the other gunshot wound supported the aggravated robbery conviction.

The State also argues that even if this court finds that the shooting of Spires was one act (a single transaction) instead of two, the convictions of aggravated battery and aggravated robbery are not multiplicitous. The State contends that a comparison of the elements test supports the convictions on both counts.

The State points out that aggravated battery required proof of great bodily harm, whereas aggravated robbery did not, and aggravated robbery required proof of a taking of property from the per-

son or presence of another by threat of force or threat of great bodily harm to any person, whereas aggravated battery did not.

The State fails to acknowledge that the sole allegation of bodily harm in its complaint and the judge's instructions to the jury was Spires' gunshot wounds. To prove the bodily harm element of aggravated robbery, the State was required to prove one fact: Vontress shot Spires—the same fact necessary for proof of the great bodily harm element of aggravated battery. Under the information and instructions in this case, the aggravated battery count required proof of the fact which was also required to prove the aggravated robbery charge. Therefore, the convictions are multiplicitous, and punishment for both crimes is a violation of double jeopardy. The aggravated battery conviction is reversed.

## MANDATORY 40-YEAR SENTENCE

Where a defendant is convicted of murder in the first degree based upon the finding of premeditated murder, the court shall determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years or be sentenced as otherwise provided by law. K.S.A. 21-4635(a). In order to make the determination, the court may consider evidence concerning any matter that the court deems relevant. The court shall include a consideration of the aggravating circumstances enumerated in K.S.A. 21-4636 and any mitigating circumstances. K.S.A. 21-4635(b). The relevant aggravating circumstances stated in K.S.A. 21-4636 are:

"(a) The defendant was previously convicted of a felony in which the defendant inflicted great bodily harm, disfigurement, dismemberment or death on another.

"(b) The defendant knowingly or purposely killed or created a great risk of death to more than one person.

"(c) The defendant committed the crime for the defendant's self or another for the purpose of receiving money or any other thing of monetary value.

"(d) The defendant authorized or employed another person to commit the crime.

"(e) The defendant committed the crime in order to avoid or prevent a lawful arrest or prosecution.

"(f) The defendant committed the crime in an especially heinous, atrocious or cruel manner."

The district court found the following aggravating circumstances to exist: Vontress knowingly or purposely killed or created a great risk of death to more than one person, and Vontress committed the crime for the purpose of receiving money or something else of monetary value.

Where the sufficiency of the evidence for establishing an aggravating circumstance under K.S.A. 21-4636 is challenged, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the State, a rational factfinder could have found by a preponderance of the evidence the existence of the aggravating circumstance. *State v. Spain*, 263 Kan. 708, Syl. ¶ 6, 953 P.2d 1004 (1998) (changing the standard of review as expressed in *State v. Brady*, 261 Kan. 109, Syl. ¶ 4, 929 P.2d 132 [1996]).

Vontress contends that the evidence was that he deliberately wounded Spires in such a way as to not create a great risk of death to her. He points to the facts that Spires was shot in the wrist and shoulder, and her injuries were not life threatening.

Vontress misconstrues the aggravating factor of great risk of death to another person. It is not necessary that the defendant caused another person life-threatening injuries; it is necessary only that the defendant knowingly created a great risk of death to more than one person. The fact that Spires was shot in the shoulder and wrist does not compel the judge to find that Vontress intended to superficially wound Spires rather than place her at risk of death. Spires testified that she covered her head with her hands before she was shot. One bullet entered her wrist and the other entered her shoulder, severing the main artery to her arm. The position of Spires' hand on her head at the time of the shooting supports the finding Vontress created a great risk of death to Spires.

Vontress also contends that to find an aggravating circumstance in the fact he created a great risk of death to Spires, it was necessary to find that the shot he fired into Anderson's head also created a great risk of death to Spires. Vontress interprets the law too narrowly. To support a finding that Vontress created a great risk of death to more than one person, there must be a direct relationship between risk of death to Spires and the killing of Anderson. See

*Spain*, 263 Kan. at 716. It is not necessary that the same shot that killed Anderson threatened the life of Spires. It is enough that the crime committed created a risk of death for Spires. Clearly, evidence that both victims were shot during the commission of the crimes sustains such a finding in this case.

Vontress also asserts that the evidence does not support the court's finding that the killing occurred to facilitate the taking of money or valuables. He argues that the killing occurred after the taking was complete, so it was not in furtherance of the robbery.

The fact that the shooting occurred after Vontress had taken Anderson's money from him is not relevant. Vontress committed the crimes for which he was convicted for the purpose of obtaining money and drugs. During the commission of the robbery, Vontress or his accomplice killed Anderson. Therefore, the crime was committed for the purpose of obtaining money and drugs, an aggravating circumstance which supports the imposition of the mandatory 40-year prison sentence.

## CRIMINAL HISTORY

Vontress was convicted of criminal possession of a firearm in count five of the indictment. A conviction of criminal possession of a firearm is a status crime that requires a finding of a prior felony conviction within the preceding 5 years. In 1993, Vontress was convicted of a person felony in Sedgwick County. The 1993 conviction was counted in Vontress' criminal history when calculating Vontress' sentence for his conviction of aggravated robbery. Vontress contends that the sentencing court erred in including the prior felony in his criminal history score because an element of a crime of conviction cannot also be used as criminal history.

K.S.A. 21-4710(d)(11) provides:

"Prior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level or applicable penalties, elevate the classification from misdemeanor to felony, *or are elements of the present crime of conviction.* Except as otherwise provided, all other prior convictions will be considered and scored." (Emphasis added.)

Interpretation of the Kansas Sentencing Guidelines Act is a question of law, and the appellate court's scope of review is unlimited. *State v. Miller*, 260 Kan. 892, 895, 926 P.2d 652 (1996).

All prior convictions are to be included in a criminal history score unless they are an element of the present crime, enhance the severity level or applicable penalties, or elevate the classification from misdemeanor to felony. *State v. Taylor*, 262 Kan. 471, 479, 939 P.2d 904 (1997). A prior felony conviction is a necessary element of the crime of criminal possession of a firearm. *State v. Loudermilk*, 221 Kan. 157, 159, 557 P.2d 1229 (1976).

In cases of multiple convictions arising out of the same complaint, the sentencing court identifies the defendant's primary crime, *i.e.*, the crime with the highest severity level, and computes the defendant's base sentence. The defendant's full criminal history is applied to the primary crime to establish the defendant's base sentence. K.S.A. 21-4720(3). An off-grid crime shall not be used as the primary crime in determining the base sentence. K.S.A. 21-4720(2). The criminal history score shall not be applied to nonbase crimes. K.S.A. 21-4720(5).

The exclusion in K.S.A. 21-4710(d)(11) does not pertain to any conviction where the prior felony does not provide an element of the offense or in some manner affect the penalty applicable to the conviction of the crime. Vontress' criminal history was not applied to his conviction for criminal possession of a firearm. Aggravated robbery was the primary crime for purposes of application of Vontress' criminal history score. The firearm conviction was not Vontress' primary crime. As a nonbase crime, a criminal history score of I was applied to the firearm conviction. Therefore, the prior felony was used as an element of the status crime and not used to establish the penalty for the firearm conviction. The sentencing court properly applied the felony conviction to that crime.

## PREMEDITATED FIRST-DEGREE MURDER

The jury was instructed, both orally and in writing, that the State had introduced evidence on the two alternate theories of first-degree murder. Murder in the first degree is the killing of a human being committed intentionally and with premeditation *or* in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436. K.S.A. 21-3401. The instruction provided:

"Where evidence is presented on the two alternate theories of proving the crime charged, you must consider both in arriving at your verdict.

. . . .

"If you do not have a reasonable doubt from all of the evidence that the State has proven murder in the first degree on either or both theories, then you will enter a verdict of guilty."

The jury was further instructed:

"If you find the defendant is guilty of murder in the first degree, the Presiding Juror shall sign the applicable verdict form and, in addition, you shall then determine the alternative theory or theories contained in 'Theory 1A,' 'Theory 1B,' or 'Theory 1C.' The Presiding Juror shall sign the applicable alternative Theory Verdict form.

"If you have a reasonable doubt as the guilt of the defendant as to the crime of murder in the first degree on both theories, then you must enter a verdict of not guilty."

The verdict form provided the following options:

"1. We, the jury, unanimously find the defendant guilty of murder in the first degree.

. . . .

"Select the appropriate theory or theories:
"Theory 1(A) We, the jury, unanimously find the defendant guilty of murder in the first degree on the theory of premeditated murder.

. . . .

"Theory 1(B) We, the jury, unanimously find the defendant guilty of murder in the first degree on the theory of felony murder.

. . . .

"Theory 1(C) We, the jury, unable to agree under Theory 1(a) or 1(b), do unanimously find the defendant guilty of murder in the first degree on the combined theories of premeditated murder and felony murder.

. . . .

"2. We, the jury, unanimously find the defendant not guilty of murder in the first degree."

The verdict form provided signature lines under each of the enumerated options. The presiding juror signed under option 1, indicating the jury unanimously found Vontress guilty of murder in the first degree. The presiding juror also signed on the signature lines under theory 1(A) and theory 1(B), indicating unanimous agreement that Vontress was guilty of both premeditated murder and felony murder. The court sentenced Vontress for premeditated

first-degree murder. Vontress contends that the jury did not elect between the two theories of first-degree murder; therefore, his mandatory 40-year prison term for premeditated murder is illegal, and the conviction and sentence must be reversed.

First-degree premeditated murder is the intentional and premeditated killing of a human being. K.S.A. 21-3401(a). "Intentional" means conduct that is purposeful and willful, not accidental. PIK Crim. 3d 56.04(d) (1994 Supp.). "Premeditation" means that there was a design or intent before the act. PIK Crim. 3d 56.04(b) (1994 Supp.). Felony murder, on the other hand, is murder committed during the commission of an inherently dangerous felony. The ostensible purpose of the felony-murder doctrine is to deter those engaged in dangerous felonies from killing negligently or accidently. *State v. Thompkins*, 263 Kan. 602, 609, 952 P.2d 1332 (1998). As stated in the statute, premeditated murder and felony murder are separate and distinct offenses, although the death of an individual is an element necessary to prove each of the crimes.

Although first-degree premeditated murder and felony murder require different types of proof, under certain circumstances prior to 1990, the accused could be charged with and convicted of both types of first-degree murder. *Thompkins*, 263 Kan. at 609. In *State v. Thompkins*, we noted that when an information charges the defendant with premeditated murder and felony murder for the commission of a single homicide, and the State introduces evidence on both theories at the trial, the trial court should instruct the jury on both theories in the alternative in order to avoid confusing the jury. 263 Kan. at 609-10. However, in a case where the defendant intends to kill the victim prior to committing a robbery and commits the robbery and kills the victim, the defendant may be convicted of each type of first-degree murder. Regardless of the finding of guilt under both theories, the defendant can be sentenced only for one first-degree murder. 263 Kan. at 610.

The defendant in *State v. Kingsley*, 252 Kan. 761, 851 P.2d 370 (1993), *modified by State v. Willis*, 254 Kan. 119, 864 P.2d 1198 (1993), contended that his mandatory 40-year sentence should be vacated on the ground that the jury's verdict on first-degree premeditated murder may not have been unanimous. The defendant

argued that the verdict form and the instructions gave rise to the possibility that all the jurors agreed that he committed first-degree murder, but some based their finding on evidence supporting one theory and others based their finding on evidence supporting the alternative theory. 252 Kan. at 785. As in this case, the jury in the *Kingsley* case rendered a unanimous verdict of guilt regarding both the premeditated and felony-murder theories. This court rejected the defendant's contention in *Kingsley*.

The *Kingsley* court relied, in part, on a case decided prior to the enactment of the hard 40 sentencing statute, *State v. Hartfield*, 245 Kan. 431, 781 P.2d 1050 (1989). In *Hartfield*, this court reaffirmed a rule set out in *State v. Wilson*, 220 Kan. 341, 345, 552 P.2d 931 (1976), *overruled on other grounds State v. Quick*, 226 Kan. 308, 597 P.2d 1108 (1979).

> " ' "When an accused is charged in one count of an information with both premeditated murder and felony murder it matters not whether some members of the jury arrive at a verdict of guilt based on proof of premeditation while others arrive at a verdict of guilty by reason of the killer's malignant purpose." ' [Citations omitted.]" 252 Kan. at 786.

*Thompkins* and the cited cases in *Kingsley* were decided prior to the legislation establishing the option of a mandatory 40-year sentence where the defendant is convicted of premeditated murder. Because each crime had the same penalty, it was of no consequence whether the jury found the defendant guilty of premeditated or felony murder. However, in 1990, the legislature provided that upon conviction of premeditated murder under certain circumstances, the court may impose a mandatory 40-year prison sentence. See K.S.A. 1990 Supp. 21-4624. The statutes were revised in 1994 with the enactment of the Kansas death penalty statute, and the hard 40 sentencing procedure was moved to K.S.A. 21-4635, which provides:

> "[I]f a defendant is convicted of the crime of capital murder and a sentence of death is not imposed, or if a defendant is convicted of murder in the first degree based upon the finding of premeditated murder, the court shall determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years or sentenced as otherwise provided by law."

The mandatory 40-year sentencing option is available only where the defendant has been convicted of premeditated first-degree murder; it is not available where the defendant has been convicted of felony murder. Therefore, the sentencing judge is precluded from imposing the hard 40 sentence where the jury is unable to reach a unanimous verdict regarding the premeditation theory. Where the sentencing court cannot ascertain whether the jury unanimously convicted the defendant of both premeditated murder and felony murder, the sentencing court has no authority for sentencing the defendant for premeditated murder.

In this case, there is no reason to doubt the jurors' unanimity regarding the first-degree murder theories. The instructions and the verdict form clearly inform the jury that a unanimous verdict is required for a conviction under either or both theories of guilt. The jury unanimously found the defendant was guilty of premeditated murder and felony murder. Under the circumstances, Vontress' sentence for premeditated murder is not illegal.

Affirmed in part and reversed in part.