IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,803

STATE OF KANSAS,
*Appellee*,

v.

BRANDON L. FOWLER,
*Appellant*.

SYLLABUS BY THE COURT

1.

For a multiple-conviction case, the phrase "the present crime of conviction" in K.S.A. 2015 Supp. 21-6810(d)(9) refers to a criminal defendant's current primary grid crime for which an accurate criminal history and the severity level of the crime determine the applicable base sentence under the Kansas Sentencing Guidelines Act.

2.

A sentencing judge's use of the same two prior misdemeanor domestic batteries both to calculate a defendant's criminal history for his or her base sentence on a current primary grid crime and to elevate a current domestic battery to a felony does not violate K.S.A. 2015 Supp. 21-6810(d)(9)'s restriction on double counting.

Review of the judgment of the Court of Appeals in 55 Kan. App. 2d 92, 408 P.3d 119 (2017). Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed February 14, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Caroline Zuschek*, of Kansas Appellate Defender Office, argued the cause, and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Brandon Fowler pleaded guilty to felony possession of methamphetamine, felony domestic battery, and violation of a protective order. His domestic battery conviction qualified as a felony rather than a misdemeanor because it was his third such conviction within five years. In calculating Fowler's criminal history score to determine the sentence for his drug possession conviction, the district court judge included the same two misdemeanor domestic battery convictions that had been used to elevate Fowler's current domestic battery to a felony.

In his appeal, Fowler argues that the district judge engaged in prohibited "double counting" of two prior misdemeanor domestic battery convictions under K.S.A. 2015 Supp. 21-6810(d)(9), which then read: "Prior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level, elevate the classification from misdemeanor to felony, or are elements of the present crime of conviction."

A majority of the Court of Appeals panel reviewing this challenge from Fowler rejected it, concluding that "[w]hen a defendant is being sentenced for multiple felony convictions, the term 'present crime of conviction' as contained in K.S.A. 2015 Supp. 21-6810(d)(9) refers only to the primary crime referred to in K.S.A. 2015 Supp. 21-6819(b)(2)." *State v. Fowler*, 55 Kan. App. 2d 92, Syl. ¶ 5, 408 P.3d 119 (2017). Court of Appeals Judge Thomas E. Malone dissented.

2

We agree with the majority's conclusion, although we reach it by a slightly different route. We therefore affirm its decision and the district court's judgment.

PROCEEDINGS IN DISTRICT COURT

Fowler and the State reached a plea agreement, under which Fowler pleaded guilty to felony possession of methamphetamine, felony domestic battery, and violation of a protective order. The agreement was based in part on the parties' mutual belief that Fowler's criminal history score of "E" made his presumptive sentence probation under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq.

The presentence investigation revealed instead that Fowler's criminal history score for sentencing of his "primary" or "base" crime of felony methamphetamine possession was "B"—based on two adult person felonies, two adult nonperson felonies, one adult person misdemeanor, and nine adult nonperson misdemeanors. Six person misdemeanors were converted to the two person felonies under K.S.A. 2015 Supp. 21-6811(a) (every three person misdemeanors convert to one person felony). Two of the six were domestic battery convictions on March 28, 2012, and December 23, 2013; these fell within a five-year window immediately preceding the current domestic battery. This timing made Fowler's current misdemeanor battery a felony rather than a misdemeanor. See K.S.A. 2015 Supp. 21-5414(b)(3).

Fowler's criminal history of "B" combined with the drug severity level 5 classification of felony possession of methamphetamine placed him in the KSGA's grid box for a presumptive prison term of 32-34-36 months. See K.S.A. 2015 Supp. 21-5706(a); K.S.A. 2018 Supp. 21-6805. The self-contained statute on his domestic battery conviction, a nongrid person felony, provided for a sentence of 90 days to one year in jail and a $1,000 to $7,500 fine. See K.S.A. 2015 Supp. 21-5414(b)(3). Violation of a

3

protective order, a Class A person misdemeanor, carried a sentence of up to one year in jail and a $2,500 fine. See K.S.A. 2015 Supp. 21-5924(a)(4), (b)(1).

The district judge imposed a base sentence of 34 months' prison for the methamphetamine conviction. Fowler received 12 months in jail and a $1,000 fine for the felony domestic battery and 12 months in jail for violation of the protective order. All three sentences were ordered to run concurrent.

COURT OF APPEALS DECISION

The Court of Appeals majority interpreted K.S.A. 2015 Supp. 21-6810(d)(9)'s reference to "the present crime of conviction" in a multiple-conviction case to refer only to the crime designated as "primary." *State v. Fowler*, 55 Kan. App. 2d 92, Syl. ¶ 5, 408 P.3d 119 (2017). It relied in part on *State v. Vontress*, 266 Kan. 248, 260, 970 P.2d 42 (1998), *disapproved of on other grounds by State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). Thus, in the panel majority's view, the district judge did not err by using two of Fowler's prior misdemeanor domestic battery convictions both to calculate his criminal history score for the base methamphetamine conviction and elevate the nonbase domestic battery from a misdemeanor to a felony. *Fowler*, 55 Kan. App. 2d at 102.

Judge Malone, who had handled *Vontress* during his service as a district judge, said in dissent that he regarded *Vontress* as distinct from Fowler's case. And he questioned the majority's fealty to the plain language of K.S.A. 2015 Supp. 21-6810(d)(9):

> "The majority would have the statute read: 'Prior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level, elevate the classification from misdemeanor to felony, or are elements of the *primary*

4

crime of conviction.' There is no indication that the Legislature intended to limit the application of the statute to the 'primary' crime of conviction. Instead, the statute's various limitations on the use of prior convictions to determine criminal history apply to 'the present crime of conviction.' K.S.A. 2015 Supp. 21-6810(d)(9). In Fowler's case, domestic battery is a present crime of conviction; thus, the statute applies in calculating his criminal history score." 55 Kan. App. 2d at 107-08 (Malone, J., dissenting).

For these reasons, Judge Malone would have vacated Fowler's sentences and remanded to the district court.

We granted Fowler's petition for review.

## DISCUSSION

An illegal sentence may be corrected "at any time while the defendant is serving such sentence." L. 2019, ch. 59, § 15 (eff. May 23, 2019). Cf. K.S.A. 22-3504(1) ("The court may correct an illegal sentence at any time."). "[A]n appellate court has the authority to consider an illegal sentence issue raised for the first time on appeal." *State v. Sartin*, 310 Kan. 367, Syl. ¶ 2, 446 P.3d 1068 (2019).

Whether a sentence is illegal is a question of law subject to unlimited review. Similarly, issues of statutory interpretation are also questions of law subject to unlimited review. 310 Kan. at 369.

*Review of Sentencing Provisions*

A brief review of the design and structure of criminal sentencing in Kansas will assist in explaining our resolution of this appeal.

Under the KSGA, the sentencing guidelines "apply equally to all offenders in all parts of the state" and are "applicable to felony crimes committed on or after July 1, 1993." K.S.A. 2018 Supp. 21-6802(a), (c). Felony convictions are classified as grid, nongrid, or off-grid offenses. See *State v. Collins*, 303 Kan. 472, 475, 362 P.3d 1098 (2015) ("nongrid" felony domestic battery distinguished from nondrug-grid, drug-grid felonies, their severity levels); K.S.A. 2018 Supp. 21-6806(c), (d) (listing off-grid crimes). Grid crimes are subdivided into nondrug and drug-grid crimes. See K.S.A. 2018 21-6803(k) (defining "grid"). The grids for nondrug and drug crimes are distinct. See K.S.A. 2015 Supp. 21-6804 (grid for nondrug crimes); K.S.A. 2018 Supp. 21-6805 (grid for drug crimes). Each has two axes. "The grid's horizontal axis is the criminal history scale [that] classifies criminal histories." K.S.A. 2015 Supp. 21-6804(c). The vertical axis sets out the continuum of crime severity levels. A "grid block" is "formed by the intersection of the crime severity ranking of a current crime of conviction and an offender's criminal history classification." K.S.A. 2018 Supp. 21-6803(l).

The grids define "presumptive punishments for felony convictions, subject to the sentencing court's discretion to enter a departure sentence." K.S.A. 2015 Supp. 21-6804(d). Each grid block sets a presumptive sentencing range and indicates a presumptive disposition of either imprisonment or nonimprisonment. K.S.A. 2015 Supp. 21-6804(f). When sentencing a nondrug crime, the "sentencing court has discretion to sentence at any place within the sentencing range." K.S.A. 2015 Supp. 21-6804(e)(1). In a presumptive imprisonment case, a sentencing judge must "pronounce the complete sentence," which includes the prison sentence, maximum potential good-time credit, and the period of postrelease supervision. K.S.A. 2015 Supp. 21-6804(e)(2). In a presumptive nonprison sentence case, the sentencing judge must pronounce the prison sentence and duration of the nonprison sanction. K.S.A. 2015 Supp. 21-6804(e)(3).

6

Various subsections of K.S.A. 2015 Supp. 21-6804 modify or supplement the general sentencing guidelines for certain nondrug felonies. For example, the sentence for a conviction for aggravated assault of a law enforcement officer that would otherwise fall in grid block 6-H or 6-I "shall be presumed imprisonment." K.S.A. 2015 Supp. 21-6804(g); see also (h) (when firearm used to commit person felony, sentence presumed imprisonment); (j) (sentence for persistent sex offender double maximum duration of presumptive imprisonment term); (k) (certain gang-related felonies carry sentence of presumed imprisonment). The nondrug grid explicitly excludes certain felonies—generally referred to as "nongrid felonies"—that typically have self-contained mandatory sentencing requirements. See K.S.A. 2015 Supp. 21-6804(i). At times, the excluded crimes may be elevated from misdemeanors to felonies after multiple convictions. See, e.g., K.S.A. 2015 Supp. 8-1567(b)(1)(D), (E) (third, subsequent DUI convictions nonperson felonies rather than misdemeanors). As alluded to above, when Fowler committed the domestic battery at the root of this case, domestic battery was one such excluded crime, and it would be elevated from a misdemeanor to a felony if committed a third time in a five-year period. See K.S.A. 2015 Supp. 21-5414(b)(3). The same is true today. See K.S.A. 2018 Supp. 21-5414(c)(1)(C).

Various subsections of K.S.A. 2018 Supp. 21-6805 modify or supplement the general sentencing guidelines for felony drug crimes defined under K.S.A. 2015 Supp. 21-5701 through K.S.A. 2015 Supp. 21-5717 (controlled substances). The drug grid section contains special procedures for certain drug-related offenses, but, because the drug grid applies only to specific drug crimes, there is little overlap between its special sentencing circumstances and those present on the nondrug grid. See K.S.A. 2018 Supp. 21-6805(e)-(g). The drug grid guidelines outline what the sentencing judge must pronounce from the bench for both presumptive prison and nonprison cases, just as the nondrug grid guidelines do. K.S.A. 2018 Supp. 21-6805(c)(2)-(3).

7

For both the drug grid and the nondrug grid, "criminal history" refers to an offender's criminal record "at the time such offender is sentenced." See K.S.A. 2018 Supp. 21-6803(c) ("criminal history" offender's criminal record "at the time such offender is sentenced"); (d) ("criminal history score" summation of convictions described as criminal history that place offender in category listed on horizontal axis of sentencing grid). The ultimate score assigned depends on a defendant's number of "prior convictions" for adult person and nonperson felonies; person and nonperson misdemeanors; and juvenile person and nonperson felony adjudications. See K.S.A. 2015 Supp. 21-6810(a).

A "prior conviction" is

"any conviction, other than another count in the current case which was brought in the same information or complaint or which was joined for trial with other counts in the current case pursuant to K.S.A. 22-3203, and amendments thereto, which occurred prior to sentencing in the current case regardless of whether the offense that led to the prior conviction occurred before or after the current offense or the conviction in the current case." K.S.A. 2015 Supp. 21-6810(a).

The provision at issue before us today marks a rare exception to inclusion in a defendant's criminal history score: "Prior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level, elevate the classification from misdemeanor to felony, or are elements of the present crime of conviction." K.S.A. 2015 Supp. 21-6810(d)(9). The same substantive provision to prevent double counting continues in effect today. See K.S.A. 2018 Supp. 21-6810(d)(10). But, in general, "all other prior convictions will be considered and scored." K.S.A. 2015 Supp. 21-6810(d)(9).

8

K.S.A. 2018 Supp. 21-6809 assigns a letter for each category of criminal history. And, as alluded to above, K.S.A. 2015 Supp. 21-6811 dictates how to calculate a criminal history score. One of its provisions came into play in this case: K.S.A. 2015 Supp. 21-6811(a) dictated that every three person misdemeanors committed within three years of the "current crime of conviction" were to be converted into one person felony for criminal history calculation purposes.

Severity levels used in classifying nondrug and drug felonies are defined in K.S.A. 2018 Supp. 21-6807 and K.S.A. 2018 Supp. 21-6808, respectively.

All of the provisions we reviewed above contemplate sentencing for a single conviction in a single case. K.S.A. 2018 Supp. 21-6819 contains the procedures for sentencing in a multiple-conviction case such as Fowler's.

In a multiple-conviction case, the sentencing judge must "establish a base sentence for the primary crime." K.S.A. 2018 Supp. 21-6819(b)(2). "The primary crime is the crime with the highest crime severity ranking." K.S.A. 2018 Supp. 21-6819(b)(2). If there are multiple crimes with the same severity ranking, the district judge must "designate which crime will serve as the primary crime." K.S.A. 2018 Supp. 21-6819(b)(2). If one or more convictions in the current case are off-grid crimes, those crimes are ignored to determine the appropriate sentences for any grid crimes. K.S.A. 2018 Supp. 21-6819(b)(2). Nongrid crimes that have sentences prescribed by individual statutes also are excluded from grid calculation and thus can never qualify as primary crimes under the KSGA. See K.S.A. 2015 Supp. 21-6804(i).

Because the crime severity levels for nondrug-grid and drug-grid crimes differ, special rules apply when a defendant has a current conviction from both categories. If such a situation creates both prison and nonprison presumptions, then the crime that

9

presumes imprisonment qualifies as the primary crime. K.S.A. 2018 Supp. 21-6819(b)(2). When both crimes presume the same disposition, the crime leading to the longest term qualifies as the primary crime. K.S.A. 2018 Supp. 21-6819(b)(2).

After determining the primary crime, the "base sentence [for the primary crime] is set using the total criminal history score assigned." K.S.A. 2018 Supp. 21-6819(b)(3). Only a criminal history score of "I," which signifies no criminal history, is used to determine any nonbase sentences. K.S.A. 2018 Supp. 21-6819(b)(5).

A sentencing judge generally may impose concurrent or consecutive sentences in multiple-conviction cases. K.S.A. 2018 Supp. 21-6819(b). The total prison sentence imposed in a case cannot exceed twice the base sentence imposed for the primary crime. K.S.A. 2018 Supp. 21-6819(b)(4).

*Prior Cases Dealing with the Double Counting Statute*

The double counting provision Fowler relies upon here has been the subject of several previous cases in this court and the Court of Appeals. The first of these was *Vontress*, the 1998 case over which the Court of Appeals panel majority and Judge Malone tangled.

In *Vontress*, this court interpreted K.S.A. 21-4710(d)(11), the predecessor statute to K.S.A. 2015 Supp. 21-6810(d)(9). The wording of the two statutes is identical but for K.S.A. 21-4710(d)(11)'s additional exclusion of a prior conviction from criminal history if it enhanced "applicable penalties" for "the present crime of conviction." This difference is of no moment here because Fowler relies on other, common language forbidding counting of prior convictions for criminal history. He argues that his sentence must be vacated as illegal under K.S.A. 2015 Supp. 21-6810(d)(9) because his two prior

10

convictions were used both to calculate criminal history for his current methamphetamine possession crime and to "elevate the classification [of his current domestic battery crime] from misdemeanor to felony." Compare K.S.A. 2015 Supp. 21-6810(d)(9) ("elevate the classification from misdemeanor to felony") with K.S.A. 21-4710(d)(11) ("elevate the classification from misdemeanor to felony"). Fowler's focused argument avoids any need to distinguish *Vontress* on statutory language difference alone.

A jury convicted defendant Damon L. Vontress of first-degree murder, aggravated robbery, aggravated battery, and criminal possession of a firearm. The district judge sentenced Vontress to a hard-40 life sentence for the off-grid first-degree murder conviction. For the grid crimes, the district judge used Vontress' aggravated robbery conviction as the primary crime to which a base sentence must be assigned using full criminal history. The calculation of Vontress' criminal history score included a prior person felony conviction that the State had also relied upon to prove an element of Vontress' current criminal possession of a firearm conviction. On appeal, Vontress argued that use of the prior conviction in both ways in a single case violated the double counting prohibition of K.S.A. 21-4710(d)(11). 266 Kan. at 259.

The *Vontress* court concluded after brief discussion that Vontress' sentence did not conflict with the statute:

> "In cases of multiple convictions arising out of the same complaint, the sentencing court identifies the defendant's primary crime, *i.e.,* the crime with the highest severity level, and computes the defendant's base sentence. The defendant's full criminal history is applied to the primary crime to establish the defendant's base sentence. K.S.A. 21-4720(3). An off-grid crime shall not be used as the primary crime in determining the base sentence. K.S.A. 21-4720(2). The criminal history score shall not be applied to nonbase crimes. K.S.A. 21-4720(5).

11

"The exclusion in K.S.A. 21-4710(d)(11) does not pertain to any conviction where the prior felony does not provide an element of the offense or in some manner affect the penalty applicable to the conviction of the crime. Vontress' criminal history was not applied to his conviction for criminal possession of a firearm. Aggravated robbery was the primary crime for purposes of application of Vontress' criminal history score. The firearm conviction was not Vontress' primary crime. As a nonbase crime, a criminal history score of I was applied to the firearm conviction. Therefore, the prior felony was used as an element of the status crime and not used to establish the penalty for the firearm conviction. The sentencing court properly applied the felony conviction to that crime." 266 Kan. at 260.

The Court of Appeals was next to address the double counting statute, particularly its intersection with a sentencing enhancement provision for persistent sex offenders.

In *State v. Taylor*, 27 Kan. App. 2d 62, 998 P.2d 123 (2000), *superseded by statute as stated in State v. Pearce*, 51 Kan. App. 2d 116, 342 P.3d 963 (2015) (noting post-*Taylor* statutory amendment removing "applicable penalties"), defendant Allen D. Taylor pleaded no contest to two counts of aggravated indecent liberties with a child. Taylor's full criminal history, used to calculate his base sentence, included a prior conviction for indecent liberties with a child and three nonperson felonies. And the existence of the prior indecent liberties conviction qualified Taylor as a persistent sex offender, which doubled the length of the prison term for any new sex crime.

The Court of Appeals held that K.S.A. 21-4710(d)(11) "flatly prohibits use of prior convictions to determine the criminal history category 'if they enhance the severity level or applicable penalties,'" and "[t]here can be no doubt that classification as a persistent sex offender enhances the applicable penalties." 27 Kan. App. 2d at 65. Indeed, "the classification of a person as a persistent sex offender is relevant only with respect to sentencing and is for the purpose of punishment, so the sentencing guidelines provision

12

of K.S.A. 21-4710(d)(11) is applicable. . . . [T]he prior . . . conviction is covered by the literal language of the statutory prohibition against consideration of a '[p]rior conviction' that enhances the severity level or applicable penalty." 27 Kan. App. 2d at 68. Taylor's sentence was vacated and the case remanded for resentencing as a result. 27 Kan. App. 2d at 68.

*State v. Zabrinas*, 271 Kan. 422, 24 P.3d 77 (2001), came next. In that case, this court examined the sentencing of defendant David Zabrinas, which mirrored that at issue in *Taylor*. Zabrinas had been convicted of one count of sexual exploitation of a child, and his prior conviction for aggravated indecent solicitation of a child was used by the district judge in two ways—to double his sentence under the persistent sex offender provision and to count as one of two prior convictions that made his criminal history score a "B." Zabrinas invoked K.S.A. 21-4710(d)(11) to attack his sentence on appeal, and this court approved and applied the "well-reasoned" decision in *Taylor* to grant relief. Zabrinas' sentence was vacated and his case remanded for resentencing, with this court noting that he should continue to be treated as a persistent sex offender but that the prior aggravated indecent solicitation of a child should be dropped from the criminal history used to arrive at his base sentence. 271 Kan. at 443-44.

The next case, *State v. Moore*, 274 Kan. 639, 55 P.3d 903 (2002), trod the same path as *Taylor* and *Zabrinas*, although it did so on the court's own initiative. 274 Kan. at 649 (problem not raised in parties' briefs). The same prior sex offense had been used to classify defendant William C. Moore as a persistent sex offender and to calculate his full criminal history score used to arrive at his base sentence. As in *Taylor* and *Zabrinas*, Moore's sentence was vacated and his case remanded for resentencing. 274 Kan. at 651.

This court returned to the *Vontress* template in *State v. Davis*, 275 Kan. 107, 61 P.3d 701 (2003).

In that case, defendant Quincy B. Davis was convicted of first-degree premeditated murder, aggravated kidnapping, aggravated burglary, criminal possession of a firearm, and aggravated robbery. His prior conviction for aggravated battery was used to calculate his criminal history score underlying the base sentence for his current primary crime of aggravated kidnapping and as an element of his current criminal possession conviction. Following *Vontress*, this court rejected Davis' K.S.A. 21-4710(d)(11)-based challenge to these two uses in his multiple-conviction case. 275 Kan. at 125.

The *Vontress* template reappeared in the reasoning of the Court of Appeals in two later unpublished cases. These cases also involved defendants who unsuccessfully challenged use of a particular prior conviction to calculate criminal history for their current primary crime and its associated base sentence on the one hand and prove a necessary element of a current criminal possession of a firearm charge on the other. See *State v. Berkstresser*, No. 94,131, 2007 WL 518832, at *6 (Kan. App. 2007); *State v. Loggins*, No. 90,171, 2004 WL 1086970, at *5 (Kan. App. 2004).

The legal principles arising from the final Kansas case before Fowler's to deal with interpretation of the double counting statute reflect the *Taylor*/*Zabrinas*/*Moore* mold rather than the *Vontress* template.

In that case, *State v. Smith*, 299 Kan. 962, 327 P.3d 441 (2014), a jury convicted defendant Francis Smith of two counts of aggravated indecent liberties with a child and two counts of indecent liberties with a child. 299 Kan. at 963-64. At sentencing, Smith's criminal history included "four prior sex offense convictions: two for aggravated indecent liberties with a child; one for aggravated criminal sodomy; and one for rape." 299 Kan. at 982.

14

Under Jessica's Law, the sentencing judge elevated Smith's two current aggravated indecent liberties convictions from hard 25 to hard 40 sentences based on the existence of two, unspecified prior convictions. The judge also used at least three of Smith's prior crimes to arrive at a criminal history score of "A" to sentence Smith for his primary grid crime. A criminal history score of "A" results from "three or more" prior adult person felony convictions. Finally, because Smith also qualified as a persistent sex offender based on his prior convictions, his base grid sentence was doubled. 299 Kan. at 983.

On appeal, Smith challenged his sentence on Count III, his primary grid crime, under K.S.A. 21-4710(d)(11). The State conceded the sentencing judge had erred, and this court agreed:

> "[Smith] argues the process used to arrive at the sentences [for the offgrid convictions under Count I and Count II enhanced by Jessica's Law] is relevant to his sentencing challenge on Count III because using two prior convictions to impose them precluded the court from using those priors again when calculating Smith's criminal history score on Count III. Smith is correct. Imposing the hard 40 sentences left only two prior convictions available for calculating the sentence for Count III.

> "One of Smith's remaining prior convictions was used to qualify him as a persistent sex offender, requiring the district court to double his gridblock sentences on both [current] indecent liberties with a child convictions under K.S.A. 21-4704(j). Using that prior conviction to classify Smith as a persistent sex offender precluded using it to calculate Smith's criminal history score. See *State v. Moore,* 274 Kan. 639, 651, 55 P.3d 903 (2002) (district court erred in failing to remove prior conviction from criminal history after using it to classify defendant as a persistent sex offender). So Smith had only one prior adult person felony conviction available for use in calculating his criminal history score when sentencing him for the indecent liberties with a child conviction in Count III." *Smith*, 299 Kan. at 983.

15

The *Smith* opinion did not cite any previous case to support the first of its conclusions quoted above:  that the two prior convictions used to support the Jessica's Law enhancements could not be reused as part of Smith's criminal history underlying his sentence for the current primary grid crime. But, in disallowing the practice under K.S.A. 21-4710(d)(11), it appeared to place it in the category of decisions to which *Taylor*, *Zabrinas*, and *Moore* belong rather than under the *Vontress* template. In other words, a Jessica's Law enhancement from a hard 25 sentence to a hard 40 sentence, despite its off-grid, extra-KSGA character, was viewed in the same way as a statutorily required doubling of a base sentence for a persistent sex offender, rather than as an element of a nonbase status crime such as criminal possession of a firearm, also independent of the KSGA sentencing grid.

The second conclusion from the *Smith* opinion quoted above followed directly from the cited *Moore* opinion, and from its predecessors, *Taylor* and *Zabrinas*. Once a prior conviction was used to qualify Smith as a persistent sex offender, that same prior could not be used again in his criminal history underlying the base sentence for his primary crime. See *Moore*, 274 Kan. at 651; *Zabrinas*, 271 Kan. at 443-44; *Taylor*, 27 Kan. App. 2d at 68.

Thus Smith's sentence for Count III violated K.S.A. 21-4710(d)(11) in two ways, making it illegal and necessitating vacation and remand of the case for resentencing on that count. That resentencing would have to depend on a criminal history counting only one prior conviction. *Smith*, 299 Kan. at 984-85. Two of the four prior convictions would be "used up" by his Jessica's Law enhancement, and a third by his persistent sex offender classification.

*Answering the Question at Hand*

Although the previous cases on double-counting that we have reviewed have settled certain issues and may have implied resolutions to others, they have not explicitly addressed the question squarely presented in this case: To which crime does K.S.A. 2015 Supp. 21-6810(d)(9)'s phrase "the present crime of conviction" refer?

The Court of Appeals panel majority concluded "that where a defendant is being sentenced for multiple felony convictions, the term 'present crime of conviction' . . . refers only to the primary crime referred to in K.S.A. 2015 Supp. 21-6819(b)(2)" for which a base grid sentence must be established. *Fowler*, 55 Kan. App. 2d at 101. Judge Malone questioned whether this reading was demanded by *Vontress*, and he criticized the majority's conclusion as "contrary to the plain language of K.S.A. 2015 Supp. 21-6810(d)(9)." 55 Kan. App. 2d at 106 (Malone, J., dissenting).

We agree with Judge Malone in certain respects. *Vontress* is not on all fours factually or legally with Fowler's case. Although one of the uses of the prior crime in *Vontress* was as a component of criminal history for determination of the base sentence on a current primary crime, which matches this case, the other use was as proof of an element of a current criminal possession of a firearm, which does not match this case. The second use of the prior crimes in Fowler's case was as elevation to make his current domestic battery a felony rather than a misdemeanor.

But the observation of these distinctions is no more persuasive than our additional note that Fowler's case is even more distinct from the *Taylor*/*Zabrinas*/*Moore* line. All of those decisions granted relief to defendants when a sentencing judge used one or more prior convictions in two ways that affected the sentence on the primary crime—once by labeling the defendant a persistent sex offender whose prison term would be doubled and

17

once by inclusion in the criminal history that would determine an applicable base grid sentence. *Smith*, for its part, is also distinct from Fowler's case in the additional gloss it added to the *Taylor*/*Zabrinas*/*Moore* rulings: a sentencing judge also is not permitted to enhance a Jessica's Law sentence based on a prior conviction used to determine criminal history underlying a base sentence for a current primary crime.

The important point, however, to take from all of the prior cases is not what is dissimilar but what is similar. All of the cases placed analytical emphasis under the double counting statute on what was done by the sentencing judge vis-a-vis the current primary grid crime. Without ruling explicitly that it must always be so, several lineups of justices on this court and judges on the Court of Appeals have apparently considered it obvious that it must always be so. Assumption cannot substitute for analysis, of course, but its recurrence over many years and many cases at least favors the panel majority over Judge Malone.

That said, we are sympathetic with Judge Malone's insistence that the plain language of K.S.A. 2015 Supp. 21-6810(d)(9) can answer what the Legislature meant when it wrote "the present crime of conviction." This court has what now qualifies as a long-standing express affection for relying on plain legislative language whenever possible. See, e.g., *State v. Gensler*, 308 Kan. 674, 677, 423 P.3d 488 (2018) (legislative intent governs statutory interpretation; reliance on plain, unambiguous language "the best and only safe rule" for determining intent; only if language ambiguous does court move to statutory construction). However, Judge Malone errs in characterizing the language he relies upon as plain; in fact, it is not even present. Judge Malone treats the "the" before "crime of conviction" as though it is an "a" or an "any."

"The" is singular and specific. See Webster's New World College Dictionary 1501 (5th ed. 2014) ("that [one] being spoken of or already mentioned"). "A" is singular but

18

nonspecific. See Webster's New World College Dictionary 1 (5th ed. 2014) ("a[2]" "1 one; one sort of . . . 2 each; any one"). "Any" can precede a singular or a plural noun, but it is nonspecific as well. See Webster's New World College Dictionary 64 (5th ed. 2014) ("one, no matter which, of more than two"). The placement of the word "the" before "present crime of conviction" must mean an individual, particular crime of conviction, not merely "a" or "any" present crime of conviction. Certainly, the Legislature could have been more clear by talking about the "primary grid" present crime of conviction or the "base" sentence ultimately to be assigned to it, but the absence of such explicit guidance does not eliminate the meanings those words would convey from among the Legislature's intentions. All we can take from its shorthand choice of "the" as the introductory article in the phrase, the actual plain language of the statute, is partial silence on the question before us. Partial silence in this situation equates to ambiguity.

Widening our lens as we must when ambiguity forces us to march from statutory interpretation to construction, we believe the final answer to the question posed by this case can be answered through examination of the Legislature's overall crafting of the KSGA.

It is evident from that broader perspective that the Legislature generally designed and drafted the KSGA using a framework that required calculation of sentences for individual convictions. See, e.g., K.S.A. 2015 Supp. 21-6804(d) ("The appropriate punishment for a felony *conviction* should depend on the severity of the crime of conviction when compared to all other crimes and the offender's criminal history." [Emphasis added.]); K.S.A. 2015 Supp. 21-6804(f) ("Each grid block states the presumptive sentencing range for an offender whose *crime of conviction* and criminal history place such offender in that grid block." [Emphasis added.]); K.S.A. 2018 Supp. 21-6806 (defining off-grid crimes requiring life sentences); K.S.A. 2015 Supp. 21-

19

6810(a) ("prior conviction" any conviction, "other than another count in the current case," which occurred before sentencing in current case).

K.S.A. 2018 Supp. 21-6819 is the exception to this design imperative, dealing as it does with multiple-conviction cases. But it does not alter the Legislature's overall structure: The KSGA is based on an assumption that sentences are calculated for each *conviction*, independent of other convictions. For any grid crime, the sentence for a particular conviction depends on the defendant's criminal history score *for that conviction* and the severity level of that crime. See K.S.A. 2015 Supp. 21-6811(i) (requiring certain prior convictions to be scored as person felonies based on identity of "current crime of conviction"). Even in the portion of the KSGA governing multiple-conviction cases, the sentence for *each conviction* still depends on the defendant's criminal history score for that conviction and the severity level for that crime. If the crime is the primary grid crime, the criminal history score used to calculate the sentence reflects the defendant's accurate criminal past; if the crime is not the primary crime, a criminal history score of "I" is assigned, regardless of its actual accuracy. In other words, even in multiple-conviction cases, the Legislature chose to treat each conviction as discrete for sentencing purposes. Once each crime has a corresponding sentence systematically assigned to it, then the district judge makes a call on their concurrent or consecutive service. See K.S.A. 2018 Supp. 21-6819.

With the overall design and structure of the KSGA as our guideposts, we conclude that including Fowler's prior domestic battery convictions in his criminal history calculation for his primary grid conviction did not violate the double-counting provision of K.S.A. 2015 Supp. 21-6810(d)(9). Fowler's prior domestic battery convictions did not elevate his possession of methamphetamine conviction's classification from misdemeanor to felony. Nor did they enhance his possession conviction's severity level or constitute an element of that crime. For that discrete conviction, the district judge used Fowler's prior

20

domestic battery convictions once each as a part of his criminal history. The judge's use of the same prior convictions to elevate a different current crime of Fowler's, the domestic battery, from a misdemeanor to a felony was also discrete and permissible. Indeed, as the Court of Appeals majority realized, Fowler's sentencing on the felony domestic battery was not governed by the grid system of the KSGA at all. See K.S.A. 2015 Supp. 21-5414(b)(3); 2015 Supp. 21-6804(i) (domestic battery sentence governed by mandatory sentencing requirements of domestic battery statute).

Finally, we note that our ultimate construction is not merely consistent with legislative design. It also is consistent with the Legislature's stated policy goals in enacting the KSGA: uniformity in sentencing. See *State v. Brown*, 305 Kan. 674, 697, 387 P.3d 835 (2017). To adopt Fowler's position and hold that his convictions must be excluded from his felony drug conviction's criminal history would mean that a defendant in his same position, but charged in separate cases, would be subject to a longer sentence.

CONCLUSION

For the reasons outlined above, we affirm the Court of Appeals decision affirming Fowler's sentences.

MICHAEL J. MALONE, District Judge Retired, assigned.[1]

---

[1]**REPORTER'S NOTE:** Retired District Judge Malone was appointed to hear case No. 116,803 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

* * *

ROSEN, J., concurring: I agree with the majority's conclusion that including Fowler's prior domestic battery convictions in his criminal history calculation for his primary grid conviction did not violate the double-counting provision of K.S.A. 2015 Supp. 21-6810(d)(9). I write separately to emphasize that the cause of the confusion that resulted in this appeal—the lack of an accurate criminal history determination prior to the entry of the plea—and the necessity of having two appellate courts address this sentencing issue is completely avoidable. I will not dwell on the point; I will simply refer to my concurring opinion in *State v. Garcia*, 295 Kan. 53, 64, 283 P.3d 165 (2012), and reiterate that, consistent with Kansas law and the heightened constitutional protections demanded in criminal proceedings, we should require a predetermined, accurate criminal history to be part of plea negotiations. Not only would this give Fowler and similarly situated defendants the knowledge necessary to effectuate a knowing, voluntary, and intelligent waiver of the right to trial, it would recognize the significance that criminal history plays in the sentencing scheme and would avoid the problems associated with the criminal history crapshoot currently employed in most plea proceedings. In most plea negotiation scenarios, an understanding of the presumptive sentence resulting from the acceptance of a plea is an essential component of reaching an agreement. This was especially true in this case.

Fowler and the State reached a plea agreement, under which Fowler pleaded guilty to felony possession of methamphetamine, felony domestic battery, and violation of a protective order. The agreement was based on the parties' mutual belief that Fowler had a criminal history score of "E" making his presumptive sentence probation under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq. However, the presentence investigation report, ordered and prepared post-plea, concluded Fowler had a criminal history score of "B" instead of the "E" that the parties believed to

be controlling upon entry of the plea. This resulted in not only changing the statutory presumptive disposition from probation to prison but nearly tripled the duration of an agreed upon controlling sentence from 12 months to 34 months.

Instead of facing a sentencing that all parties anticipated would be in a presumptive probation posture, Fowler was now forced to file a motion for dispositional departure based on the discrepancy between his anticipated and actual criminal history. At sentencing, the State even joined Fowler's request for a dispositional departure because that was the "spirit" of the plea agreement. The district judge denied the motion and imposed the 34-month presumptive prison sentence.

My point in *Garcia* was and still continues to be that there is simply no reason to not have an accurate criminal score calculated before the plea is accepted. This would provide to all the parties involved the ability to knowingly negotiate the terms of a plea and intelligently consider all of the sentencing possibilities and ramifications that result from the convictions of the plea. We simply should not continue to legitimize a plea negotiation process that undermines the presumption of fairness and dignity that serves to protect our liberty interests.